UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

- - -

HONORABLE FERNANDO L. AENLLE-ROCHA
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| PLAINTIFF, | ) |
| VS. | ) CASE NO.: |
| | ) CR 23-382-FLA |
| JUAN CARLOS CRUZ RAMOS, | ) |
| DEFENDANT. | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

FRIDAY, MARCH 7, 2025

LOS ANGELES, CALIFORNIA

LAURA MILLER ELIAS, CSR 10019
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
PH: (213)894-0374

UNITED STATES DISTRICT COURT

2

APPEARANCES OF COUNSEL:

ON BEHALF OF PLAINTIFF:

          BY:  ALEXANDRA KELLY
          ASSISTANT UNITED STATES ATTORNEY

          1100 UNITED STATES COURTHOUSE
          312 NORTH SPRING STREET
          LOS ANGELES, CA 90012


ON BEHALF OF DEFENDANT:

          LAW OFFICE OF ARTURO HERNANDEZ
          BY:  ARTURO HERNANDEZ, ESQ.

          10050 MACHADO LANE
          SAN JOSE, CA 95127

UNITED STATES DISTRICT COURT

Case 2:23-cr-00382-FLA    Document 181    Filed 05/05/25    Page 3 of 34   Page ID
#:930

3

INDEX

PROCEEDINGS                                          PAGE

SENTENCING                                            4

UNITED STATES DISTRICT COURT

4

LOS ANGELES, CALIFORNIA; FRIDAY, MARCH 7, 2025; 9:03 A.M.

- - -

THE CLERK:  Calling LA CR 23-382.

United States of America versus Juan Carlos Cruz Ramos.

Counsel, please make your appearances beginning with the government.

MS. KELLY:  Good morning, Your Honor.  Alexander Kelly on behalf of the United States.

MR. HERNANDEZ:  Good morning, Your Honor.  Arturo Hernandez on behalf of Mr. Cruz who is present in court being assisted by the certified court interpreter.

THE COURT:  Mr. Hernandez, please grab one of those microphones and bring it closer so we can hear you in court. If you client speaks, he will need one as well, but we'll get to that in a bit.

MR. HERNANDEZ:  Thank you.

THE COURT:  Mr. Cruz Ramos is being assisted by Spanish language interpreter.  If I could have his appearance on the record, please.

THE INTERPRETER:  Good morning, Your Honor.

F. Javier Villalobos, Spanish language interpreter oath on file.

THE COURT:  All right.  Good morning to everyone.

Probation officer is also present.  If she could

UNITED STATES DISTRICT COURT

please put her appearance on the record.

MS. DODSON:  Good morning, Your Honor.

Amber Dodson on behalf of the United States Probation and Pretrial Services Office.

THE COURT:  All right.  Good morning to you.

Mr. Cruz Ramos, I am Judge Aenlle-Rocha.  You may recall I presided over your change of plea hearing on May 3, 2024.  And on that date you pleaded guilty to Counts 1 and 8 of the first superseding indictment which charged you with conspiracy to engage in the business of dealing in firearms without a license and deliver firearms to a carrier without written notice in violation of Title 18 United States Code Section 371 and that was Count 1.

And Count 8 charged you with the unlawful shipment of firearms by an alien in violation of Title 18 United States Code Section 922(g)(5).

We are here today for your sentencing and I would like to tell you a little bit about how the hearing will unfold.  I mentioned some of these principles to you during your change of plea hearing, but it's been a few months since that happened.  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission issued guidelines for judges to consider when sentencing individuals in criminal cases.

The sentencing guidelines today are advisory which

6

means they are not binding on judges.  However, even though they are not binding or mandatory, I am still required by law to arrive at a correct sentencing guideline range.  I'm required to consider that guideline range along with a number of other factors before imposing a final sentence.

As a result during the hearing this morning, I am going to be making calculations under the sentencing guidelines and I will arrive at a final sentencing guideline range and I will consider that range.  I will consider the impact of the parties' plea agreement.  If there are any objections to the probation officer's presentence report, I will hear those objections and I will rule or decide on the objections.

I will consider the statements of the prosecutor as well as your attorney and if you would like to make a statement, you may.  You are not obligated or required to make any statement whatsoever.  I will consider the recommendation of the probation officer.  I will consider whether I should depart from the sentencing guidelines range in your particular case.

I also will consider a number of factors that are set out in Title 18 United States Code Section 3553(a) to decide whether I should impose a sentence that varies from the sentencing guidelines.  The 3553(a) factors include all of the following:  The nature and circumstances of the crimes

of conviction and your personal history and characteristics. The need for the sentence that I impose to reflect the seriousness of the offenses, to promote respect for the law and to provide a fair and just punishment for the offenses.

The need for the sentence to afford adequate deterrence to criminal conduct, to protect the public from further criminal crimes by you, and to provide you with needed educational training, medical care or other correctional treatment in the most effective manner available.

The factors I'm gonna consider also include the kinds the sentences available and the need to avoid an unwarranted sentencing disparity among defendants with similar records who have been convicted of similar conduct. Lastly, the need to provide restitution to the victims of the crimes.  Not all of the factors I just mentioned may apply in your particular case, but those are all of the 3553(a) factors.

In preparing for the hearing today, I read and considered the report and recommendation of the U.S. Probation Officer including the final revised report and the addendum to that report and the sentencing memoranda that were filed by the prosecutor and by your attorney.

Have both parties received and reviewed the final presentence report?

MS. KELLY:  Yes, Your Honor.

MR. HERNANDEZ:  Yes, Your Honor.

THE COURT:  All right.  Counsel, have you read and discussed with your client the final presentence report, the addendum to it and the recommendations that are in that report?

MR. HERNANDEZ:  That is correct, Your Honor.  On numerous occasion I have consulted with my client personally and by phone and last night, uh, the last time.

THE COURT:  Have you explained to your client the standard conditions of probation and supervised release that are in the Court's second amended General Order 20-04 which is attached to the presentence report?

MR. HERNANDEZ:  Yes, I did, Your Honor.  At the direction of your clerk, I reviewed the document with my client in the Spanish language.  And just for the record, I worked my way through law school some 45 years ago at Santa Clara Law School working, uh, my way through law school as a certified law student certified both federal and state court so my client is well served.  I don't think I've -- I've lost my certification, it was 111.  Now, they're in the 30,000s after 50 years.  He understands what I explained to him.

THE COURT:  Okay, very well.

Mr. Cruz Ramos, have you discussed with your attorney the final presentence report and either had it read

9

to you or translated for you along with the addendum to the report, the recommendations that are in the report and the standard conditions of probation and supervised release that are contained in the Court's second amended General Order 20-04 which is attached to the presentence report?

THE DEFENDANT:  Yes, it was read to me.

THE COURT:  Do you waive reading of the standard conditions of probation and supervised release contained in the Court's second amended General Order 20-04 at this time?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And counsel, do you join and concur in that waiver?

MR. HERNANDEZ:  I do, Your Honor.

THE COURT:  I'm going to now summarize the recommendations that the probation officer has made concerning the guideline calculations in the presentence report.  So it is recommended that I adopt a base Offense Level of 20.  The two counts of conviction Counts 1 and 8 were grouped together for guideline calculation purposes. And in grouping the counts, the offense level is derived from the count that has the highest offense level.

The base offense level for the conspiracy count is the base offense level from the guideline for the substantive offense, the Count 8 offense.  The substantive offense is

governed by Guideline Section 2K2.1 and pursuant to Guideline Section 2K2.1(a)(4)(B), a base Offense Level of 20 applies if the offense involved a semi-automatic firearm that is capable of accepting a large capacity magazine and the defendant was a prohibited person at the time that he committed the offense.

Mr. Cruz Ramos shipped firearms to Mexico including AR-15 and AK-47 style firearms that were each capable of accepting 30-round and 40-round capacity magazines.

In addition Mr. Cruz Ramos is illegally in the United States and he has sustained two felony convictions for illegal reentry in the United States District Court for the District of Arizona.  As a result, um, because of those facts, the base Offense Level is 20, again, according to the probation officer.

The officer also recommends a nine-level increase to be applied because the offenses involved 200 or more firearms pursuant to Guideline Section 2K2.1(b)(1)(E), if the offense involved 200 or more firearms, then a ten-level increase should be applied.  Mr. Cruz Ramos and his two codefendants shipped over 200 firearms to Mexico.  However, Guideline Section 2K2.1(b) also states that the cumulative offense level determined from the application of subsections B-1 through B-4 that they cannot exceed Level 29.

A ten-level increase applied to the base Offense

Level of 20 would result in an Offense Level of 30.  As a result, an adjustment has been made so that it's only a nine-level enhancement instead of a ten-level enhancement so that the cumulative offense level does not exceed Level 29.

A four-level increase has also been applied because the firearms were intended to be transported outside the United States pursuant to Guideline Section 2K2.1(b)(6)(A) if the defendant possessed or transferred any firearm with knowledge, intent or reason to believe that it would be transported out of the United States, then a four-level increase also applies.

Mr. Cruz Ramos and his codefendants sent firearms to Mexico and therefore, they intended to transport firearms outside the United States.  As a result, the four-level increase has been applied by the probation officer.

Then a three-level decrease has been applied for early acceptance of responsibility.  Mr. Cruz Ramos accepted responsibility for his crimes and he timely notified the government of his intention to enter a guilty plea in this case.  So this leaves us with a total Offense Level of 30.

Mr. Cruz Ramos has been assigned three criminal history point as result of criminal history and this places him in Criminal History Category 2.  This results in a sentencing guideline range of 108 to 135 months imprisonment. The maximum term of imprisonment for Count 1 is five years.

The maximum term of imprisonment for Count 8 is 15 years so the total maximum possible term of imprisonment is 20 years.

With respect to supervised release, the maximum term for each of the two counts is three years.  Multiple terms of supervised release must run concurrently and under the Sentencing Guidelines, the guideline range for each count is one to three years of supervised release.  By statute, Mr. Cruz Ramos is eligible for one to five years of probation for each count.  Under the Sentencing Guidelines, he is not eligible for probation because the guideline range falls within Zone D of the sentencing table.

The maximum fine by statute is $250,000 for each count.  So the maximum possible fine is $500,000.  The guideline fine range is between $30,000 and $250,000.  There's also a mandatory special assessment of $100 for each count.  Restitution does not apply in this case.  Forfeiture does however.  Mr. Cruz Ramos agreed to forfeit the firearms, magazines and the ammunition that are identified as the forfeitable property in his plea agreement.  On June 11th of 2024, I issued a preliminary order of forfeiture as a result.

Now, in the event I impose a prison term, I am contemplating the imposition of conditions of supervised release which I'm going to refer as proposed conditions of supervised release.  The parties were provided with the proposed conditions of supervised release before the

beginning of today's hearing.  Are the parties in receipt of the proposed conditions of supervised release?

MS. KELLY:  Yes, Your Honor.

MR. HERNANDEZ:  Yes, Your Honor.

THE COURT:  All right.  I'm going to first take argument from counsel on any objections to the presentence report, its findings, calculations and recommendations and any objections to the proposed conditions of supervised release.  If there are objections, I will rule on the objections.  After I've done that, I'll hear from the parties and Mr. Cruz Ramos, if he wishes to say anything, as to 3553(a) factors.

So let me start with the government, does the government have any objections to the final presentence report or to the proposed conditions of supervised release.

MS. KELLY:  Your Honor, the government has no objections to either.

THE COURT:  Let me turn to defense, does defense have objections to either?

MR. HERNANDEZ:  No objections from the defense, Your Honor with the report.

THE COURT:  All right.  Or to the proposed conditions of supervised release?

MR. HERNANDEZ:  No objections, Your Honor.  I accept those conditions.

THE COURT:  Very well.

I am consulting and taking into account the 2021 edition of the Sentencing Guideline Manual, uh, ordinarily, I would impose a sentence that's based on the Sentencing Guideline Manual that's in effect on the date of sentencing pursuant to 18 U.S. Code Section 3553(a) 4 and 5 and Guideline Section 1B1.11(a).

However, if the guideline manual in effect on the date of sentencing would violate the ex post facto clause of constitution, then I am required to use the guideline manual that was in effect on the date of offenses of conviction when those crimes were committed.  And that is pursuant to Guideline Section 1B1.11(b)(1).

The manual that would apply ordinarily today at the time of sentencing, the 2024 Guideline Manual includes a four-level enhancement for the possession of firearms that have no serial numbers on them that are otherwise known as ghost guns.  And this enhancement I understand would apply to Mr. Cruz Ramos because at least some of the firearms at issue in this case qualify as ghost guns.  Is that correct, government?

MS. KELLY:  Yes, Your Honor.

THE COURT:  So because of that fact and the application of the ex post facto clause, I am applying the 2021 edition of the Guideline Manual because that edition did

not require imposition of the four-level enhancement for possession of ghost guns.

As I said earlier, 18 U.S. Code Section 3553(a) lists factors I am required to consider before I can impose a final and appropriate sentence.  Mr. Cruz Ramos and the government have each filed sentencing memorandums and I have reviewed them.  Government, are there any victims in this case?

MS. KELLY:  No, Your Honor.

THE COURT:  All right.  Would you like to be heard before I impose sentence?

MS. KELLY:  Your Honor, the government submits on its papers today.

THE COURT:  All right.  Very well.  Let me turn to the defense then.  Mr. Hernandez, would you like to speak on behalf of your client?

MR. HERNANDEZ:  Yes, Your Honor.

THE COURT:  Would you mind using the lectern?

MR. HERNANDEZ:  Your Honor, basically, the 3553 factors that we included in our filing are the main argument in our case.  As you see in the audience, you see the family, entire family members including two minors and two adults that Mr. Cruz Ramos has raised properly.  One of them is a dental technician, the oldest one, the daughter.  The son is working and taking care of the minors.

One of the things that I wanted to ask the Court to consider is that all his crimes, all his felonies, priors were involving 12, 15 years ago, very old convictions and basically, they were convictions that I consider for coming to work, for coming to see his family.  A situation where he's deported, he was not deported under what we would consider a felony, deportation after a serious felony.  He was just deported on a reentry.  So he did 60 days or something, minor amount of time.

The other ones are cases that involve DUI that are like 12, 15 years old and some of them are not even substantiated because there was no record of it.  So he has a misdemeanor conviction and he has two felony convictions that make him go into Level 3.  I think it's over represented and I think the Court could consider that his entire life was horrendous.

If the Court remembers our filings and the filings by the probation report, by the PSO, it's horrendous.  He was left unattended by a mother like he says, she did it for love and she couldn't take care of me so she left me when I was a baby.  We tried to reconnect.  She didn't even have money to get a bus ticket to go see him.  Those are the things that he endured.

He was a worker.  He was enticed by co-workers to use drugs so he could work more, he could work stronger and

produce more for the boss and he became addicted.  He eventually was able to cure that on his own.  There's no record that he ever had any type of counseling or any type of drug addiction programs, but he did it all on his own.

He made a mistake, he admits his mistake, terrible mistake.  I don't recall exactly if the packaging was the foil paper, the outer packagings were the one that had his fingerprints on it, but I remember on the outside not on the actual weapons.  So that gives a little bit of leeway to believe that maybe he wasn't involved as other people, but nonetheless, he accepts full responsibility.  He plead to it at an early stage like you said and he deserves the three-point reduction.

The government has agreed that he would not be sentenced to no more than the low end of the guidelines.  The low end of the guidelines as it stands right now is 108 months.  We were asking in our papers that he should be sentenced to Level 28, at the low end would be 87 months.  I want to ask the Court to further consider a 60-month sentence in view of all his problems he had.

He will be willing to sign and agree to deportation or self -- voluntary departure at this time.  That would give the government substantial assistance in the sense that he would not be taking resources that other people can be used against.  He would be willing to sign his deportation.  I

18

think if the Court were to give him a point for that and consider that he's not a Level 3 because of the kind of sentences that he got.

He got 60 or something very minor, and that was only because he re-entered, but not because he was deported on a major felony or drug felony.  He has no record of any drug dealings or any type.  Drug abuse, yes.  So I would ask the Court to consider those factors and consider a 60-month sentence in this case and at the very most, the 87-months we're asking for in our paperwork.  Unless the Court has some questions of me, my client would like to address the Court.

THE COURT:  I have no questions.  I do want to just clarify, the probation officer has placed him in Criminal History 2 not 3.

MR. HERNANDEZ:  I'm sorry.

THE COURT:  All right.  Mr. Cruz Ramos, if you would like to make a statement, I'm happy to hear from you. As I said, you are not required or obligated to speak.  Your attorney has spoken on your behalf and I've read the sentencing papers that were filed on your behalf.  You do have a right to speak and, again, I'm happy to hear from you if you would like to say anything.

THE DEFENDANT:  I used to work in the fields and the salary wasn't enough to support my kids.  I used to use drugs before and I'm very sorry about that, and I'll never do

UNITED STATES DISTRICT COURT

it again.  I would like to say that I'm sorry to my children because I let them down because I'm not with them.  And I'm very sorry for all the bad things I've done and I will not do it again.  And yes, that's all.

THE COURT:  All right.  Thank you very much, Mr. Cruz Ramos.

And Counsel, anything further from the government?

MS. KELLY:  Your Honor, the government doesn't have anything to add.

THE COURT:  All right.  I am prepared to impose sentence.  Does either counsel know of any reason sentence should not now be imposed?

MR. HERNANDEZ:  None from the defense, Your Honor.

MS. KELLY:  No, Your Honor.

THE COURT:  Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the Defendant Juan Carlos Cruz Ramos is hereby committed on Counts 1 and 8 of the first superseding indictment to the custody of the Bureau of Prisons for a term of 108 months.  The term consists of 60 months on Count 1 of the first superseding indictment and 108 months on Count 8 of the first superseding indictment all to be served concurrently.

It is ordered that Mr. Cruz Ramos shall pay to the United States a special assessment of $200 which is due immediately.  Any unpaid balance shall be due during the

period of imprisonment at the rate of not less than $25 per quarter and pursuant to the Bureau of Prisons Inmate Financial Responsibility Program.

Pursuant to Guideline Section 5E1.2(a), all fines are waived as I find that Mr. Cruz Ramos has established that he is unable to pay and is not likely to become able to pay any fine.

I find that the property identified in the preliminary order of forfeiture is subject to forfeiture. The preliminary order is incorporated by reference to this judgment and approved.

I recommend the Bureau of Prisons evaluate Mr. Cruz Ramos' eligibility for the 500-hour Residential Drug Abuse Program known as R-DAP and provide all necessary treatment.

Upon release from imprisonment, Mr. Cruz Ramos shall be placed on supervised release for a term of three years under the conditions of supervised release that were previously given to the parties and that I now adopt.  I will not repeat them at this time, but they will be included in the judgment and commitment order.

I authorize the Probation and Pretrial Services Office to disclose the presentence report to the substance abuse treatment provider to facilitate Mr. Cruz Ramos' treatment for narcotic addiction or drug dependency.  Further

rediscloure of the presentence report by the treatment provider is prohibited without the consent of this Court.

Now, I find the sentence to be appropriate for the following reasons. I have considered all of the aggravating and the mitigating circumstances in this case. Mr. Cruz Ramos stands convicted of serious offenses. For over a year between March 2022 and July of 2023, Mr. Cruz Ramos and his codefendants shipped over 200 firearms to Mexico many of which were unserialized ghost guns which means they can't be traced.

On at least four separate occasions, Mr. Cruz Ramos and his codefendants assembled AR-15 style firearms, concealed the firearms in packages for shipment, brought the packages to freight forwarding companies in Los Angeles County and elsewhere, and shipped the firearms to buyers in Mexico with whom Mr. Cruz Ramos and his codefendants had negotiated the sale of these firearms in exchange for significant payments. Mr. Cruz Ramos did not have a license to sell firearms.

And as has been raised here by defense counsel, he's in the United States illegally. According to the plea agreement which the parties obviously agree to, he was deported from the United States nine separate times between the years 2000 and 2016. He also has two felony convictions that counsel referred to for illegal reentry in federal court

in Arizona and also misdemeanor convictions for DUI and battery on a peace officer.

In addition to the serious nature of the offenses, I did consider Mr. Cruz Ramos' personal history and his background in determining the appropriate sentence. Mr. Cruz Ramos is now 42 years old.  He's a citizen of Mexico.  His father passed away before he was born, and his mother was unable to care for him for economic reasons causing her to give him to family members to raise.

Mr. Cruz Ramos spent a portion of his childhood working on a farm where he was often treated harshly and suffered physical punishment.  At eight years of age, he left the farm to search for his mother and he first entered the United States illegally 1999.  Mr. Cruz Ramos is married to codefendant Montano Jimenez and they have four children, two of whom are minors.  And I appreciate the family being here today.

He also has a history of substance abuse most notably with methamphetamine and according to presentence report, he's overdosed three separate times on methamphetamine.  So I've considered all of these factors and other facts and circumstances that are set out in greater detail in the presentence report in selecting a sentence at the low end of the sentencing guideline range.

The sentencing guidelines calculations have

captured the nature of the offenses including the number and types of firearms involved.  Mr. Cruz Ramos' status as a prohibited person under the law, his knowledge that the firearms would be transported outside the United States, his acceptance of responsibility and his criminal history.  The guidelines do not take into account his very significant number of repeated illegal reentries into the United States.

Now, I declined to vary downward because of the severity of these crimes including the number and the nature of the firearms involved.  Mr. Cruz Ramos' lack of respect for the laws of the United States.  The fact that a lower sentence would put the public at risk in my view and it would result in an unwarranted sentencing disparity with other defendants with similar records who have been convicted of similar conduct.

So for all of these reasons, I find that the sentence I have imposed today is sufficient, but not greater than necessary to comply with the purposes of Section 3553(a).  The sentence imposed reflects the seriousness of the offenses, promotes respect for the law, provides a just punishment for the crimes.  It will protect the public from further crimes by Mr. Cruz Ramos.

It affords adequate deterrence to criminal conduct in the future, and it will provide Mr. Cruz Ramos with needed educational or vocational training, medical care or other

correctional treatment in the most effective manner.

The statement of reasons shall be included in the commitment order and the judgment and shall be provided to United States Probation Office, the United States Sentencing Commission and the Bureau of Prisons.

Is there any request regarding housing?  Does he wish to be, if possible, does he wish to be assigned to housing in the Eastern District of California?

MR. HERNANDEZ:  Yes, Your Honor.  We're asking that he be housed in Atwater that would be the closest or the closest available facility to Fresno where his minor kids reside and his entire family resides in Sanger.

THE COURT:  Did you identify a specific FCI institute there?

MR. HERNANDEZ:  That would be the one at Atwater, A-t-w-a-t-e-r.

THE COURT:  I will recommend that Mr. Cruz Ramos be housed at FCI Atwater or otherwise within the Eastern District of California as close to Fresno as possible to facilitate visits by his family.

Mr. Cruz Ramos, please understand that it is the Bureau of Prisons that determines where individuals serve their sentences not judges.  The best I can do is to recommend that you be placed at that facility or within a particular district.

25

Now, you do have a right to appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there was some other fundamental defect in the proceedings that was not waived by your guilty plea and your plea agreement.  You also have a right to appeal your sentence under some circumstances especially if you think your sentence is contrary to law.

A defendant, however, may waive appellate rights as part of a plea agreement, and you did enter into a plea agreement that waives some or all of your rights to appeal your conviction and your sentence.  Such waivers are typically enforceable and the plea agreement controls your right to appeal.  If you believe that the waiver itself in the plea agreement is unenforceable, you can present that theory to Court of Appeals.

If you retained any right to appeal, with few exceptions, a Notice of Appeal must be filed within 14 days of the judgment being entered.

Do you understand this?

THE DEFENDANT:  Yes.

THE COURT:  If you're unable to afford a transcript of the record in this case, one will be provided at government expense.  If you're unable to pay the cost of an appeal or the filing fee, you apply for leave to appeal in in forma pauperis.  If you do not have counsel to act on your

behalf and if you request it, the Clerk of the Court will prepare and file a Notice of Appeal on your behalf.

Again, you must make the request within 14 days of the entry of judgment in your case.  The Notice of Appeal must designate the judgment or the order that you're appealing from and the fact that you're appealing to the United States Court of Appeals.  It also should designate the portion of the proceeding not already on file and in the docket that you believe are necessary for the court reporter to transcribe and to include and to make a part of the record on appeal.

Does the government move to dismiss Counts 2 through 6 as to Mr. Cruz Ramos?

MS. KELLY:  Yes, Your Honor.

THE COURT:  That motion is granted.

Do the parties have any further objections that you would like me to consider?

MS. KELLY:  Your Honor, I may have missed it, but I understand that Your Honor decided not vary downwards.

THE COURT:  I did.

MS. KELLY:  And then also Your Honor decided not to depart downwards based on counsel's argument on the criminal history points.

THE COURT:  Well, I guess that wasn't a hundred percent clear to me because it sounded as if there was

perhaps a misunderstanding that he was in Criminal History Category 2. Let me just clarify that. Counsel, were you asking me to depart downward from Criminal History Category 2 to Criminal History 1 because you believe that the criminal history is over represented?

MR. HERNANDEZ: That is correct. That was my argument, Your Honor. As I stated in this case, the criminal history involves nonviolent felonies, what I call the status crime. He re-entered not after an aggravated deportation pursuant to a felony conviction before. It was more of a voluntary departure type that he was just reentering to visit his family and reunite with his minor kids and sustain them. It was not what I called an aggravated deportation where he would be a crime that would be a felony. I would ask the Court to reconsider that. We're asking for one point so he can come down to 87 months. And I did misspeak. I said Level 3. I was talking about the three criminal history points, but the criminal level was two. I'm asking that the Court reconsider Level 1 and that would give him an opportunity to be able to sentenced between 60 and 87 months.

THE COURT: All right. Well, the criminal history consists of three points all together. One point was assigned as a result of a 2008 conviction for a DUI and battery on a peace officer for which he was sentenced to ten days in jail five years later in 2013. And that's at

28

Paragraph 58 of the presentence report.

And then he was assigned no criminal history points for a 2010 conviction for illegal reentry into the United States that occurred -- that was incurred or suffered in U.S. District Court for the District of Arizona.

He was then assigned two points for a 2012 conviction.  So the second illegal reentry conviction also in the United States District Court for the District of Arizona.

Let me turn to the probation officer.  Can you please explain to me why he was assigned these three points?

MS. DODSON:  Sure, Your Honor.

THE COURT:  I also will point out that this objection to criminal history was not made in defendant's sentencing memorandum.  So no one including the government, the probation officer or I was given notice before today's hearing that there would be an objection to the criminal history category.

Typically, that objection is made in advance of sentencing so that the government can respond and the probation officer has an opportunity to consider the objection and also file an addendum to the presentence report responding to the objection.

MR. HERNANDEZ:  My apologies, Your Honor.  I took on the case recently and I didn't do that.  He wanted to be sentenced earlier and that contributed to my mistake.  The

UNITED STATES DISTRICT COURT

responses to the probation report were made by previous counsel.  Not an excuse just an explanation.

MS. DODSON:  Thank you, Your Honor.

Two of the defendant's prior convictions fall within the time frame of countable offenses.

THE COURT:  Under the guidelines.  So if the convictions are not more than a certain number of years old, they can be considered.

MS. DODSON:  Yes, Your Honor.  In this case more than ten years old.

MR. HERNANDEZ:  Your Honor, if I may, the 2008 conviction was imposed in five years later.  That's the point that I'm arguing.  Because it doesn't make sense if the Court were to take the actual date of the event, the offense that would be 16 or 12 years old from 2008.  He barely makes the ten year for 2014, 2015 as of today.  So I would urge the Court to reconsider that point because this is a very old case.

It was a misdemeanor, 148 battery of police officer.  148 is actually not -- it's supposed to be 148.  It could be a crime of interfering with a police officer's activities and duties, but not necessarily a peace officer being assaulted.  So unfortunately, those dockets are so old they don't exist very rapidly.

And also additional charges of driving under the

influence of a drug, resisting public or peace officer driving while license suspended or revoked for DUI were dismissed.  I'm sure that the Court concerned that it was an assault on peace officer, but that charge was apparently dismissed.  I couldn't find anything in the short period of time because the records don't really exist for misdemeanors in Fresno County.

THE COURT:  Well, the presentence report reflects battery on a peace officer as an offense of conviction.  It also reflects that a resisting a peace officer, resisting arrest that was dismissed.  You see that?  He pled guilty to the .08 percent of alcohol in that case.  As I'm sure you know, there are different subsections to 23152 of the Vehicle Code in California and it's not uncommon a part of plea agreements for the A subdivision count to be dismissed when someone pleads guilty to the B or vice-a-versa.

MR. HERNANDEZ:  Unfortunately, the report said the California Highway Patrol arrest report is unavailable and there was no way to argue or brief it in that sense.

THE COURT:  Let's focus on why a point was added.  These are sentencing guideline calculations so perhaps the probation officer can enlighten as to why a point was added for this conviction that was actually suffered in 2013, date of the offense was 2008, but he wasn't actually convicted of it until 2013.

MS. DODSON:  Right, and I apologize if I was unclear earlier.  The guidelines take into account when the sentence was imposed.  So yes, the offense occurred in 2008, however, the defendant was sentenced 2013 which falls within the time frame of the guidelines.

THE COURT:  And under Section 4A1.1(c) of the guideline, it says you add one point for a prior sentence that is not a sentence imposed in the case of a felony or a sentence that resulted in a term of imprisonment that was more than 60 days.  Those carry higher points, three points and two points each.  So one point for a sentence that is neither of those and one point was assigned in this case.

And then under Section 4A1.2(e)(2), if the prior sentence, it's not the date of the offense, if the prior sentence was imposed within ten years of the defendant's commencement of the offense in this case, then it's counted.  The offenses in this case were committed within ten years of that sentence being imposed; correct?

MS. DODSON:  Yes, Your Honor.  March 22nd is the earliest date of conduct in this case.

THE COURT:  For the conviction in this case.  So that's why one point was assigned for this first conviction and sentence from 2013 for the DUI.  And it doesn't really matter that it's a DUI versus a battery on a peace officer.  Either way it's just one point.  He's not getting extra

32

points because there was a conviction for more than one offense.

MR. HERNANDEZ:  Understood, Your Honor.

THE COURT:  And then turning to the second one, I believe the same principles apply.  Actually, it's two points because the sentence was in excess of 60 days; is that right?

MS. DODSON:  That's correct, Your Honor.

THE COURT:  If it had been a felony, I guess in excess of more than a year, it would have been three points.  So two points were imposed in that case because the sentence was not more than a year, but it was more than 60 days; is that right?

MS. DODSON:  Yes.  And the December 11, 2012 date which the sentence was imposed falls within the ten years.

THE COURT:  Within ten years.

MS. DODSON:  Of the earliest date of conduct of the offense.

THE COURT:  So that's why the second illegal reentry conviction counts for two points, but the one from 2010 does not because it's more than ten years before the crimes committed in this case.  So it appears to me the points were correctly calculated under the guidelines at three points which places him in Criminal History Category 2.

So for the reasons I've stated, I'm not departing downward or varying downward.  Again, I've stated all the

reasons including the severity of the offenses in this case which are serious.  Involved over 200 firearms being shipped to Mexico including ghost guns and all the other factors I set out.

All right.  Anything else?  Any other objection?

MS. KELLY:  No, Your Honor.

MR. HERNANDEZ:  No, Your Honor, submitted on the record.  Thank you so much.

THE COURT:  All right.  Thank you.

One moment.  There is an underlying indictment so I believe that needs to be dismissed as well.

MS. KELLY:  Yes, Your Honor.

THE COURT:  The underlying indictment is dismissed because it was a first superseding indictment in this case.

MR. HERNANDEZ:  Thank you, Your Honor.

THE COURT:  All right.  Thank you, everyone.

Good luck to you, Mr. Cruz Ramos.  Take care.

(Proceedings were concluded at 9:58 a.m.)

CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES        )

                             )  SS.

STATE OF CALIFORNIA          )


I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED

STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE

FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET

FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN

FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO

FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION

OF MY STENOGRAPHIC NOTES.



DATE:  APRIL 30, 2025


     /s/  LAURA MILLER ELIAS

LAURA MILLER ELIAS, CSR 10019

FEDERAL OFFICIAL COURT REPORTER